UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO MEDINA VENEGAS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 1:19-cv-00079-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

## I.     Introduction

Plaintiff Antonio Medina Venegas ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 15, 16 and 17. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

## II.    Procedural Background

On May 4, 2015, Plaintiff filed an application for disability insurance benefits alleging disability beginning January 4, 2014. AR 28. The Commissioner denied the application initially on November 19, 2015, and again following reconsideration on February 19, 2016. AR 28.

On February 24, 2016, Plaintiff filed a request for a hearing. AR 28. Administrative Law Judge Joyce Frost-Wolf presided over an administrative hearing on November 14, 2017. AR 46-71. Plaintiff, who testified through an interpreter, appeared and was represented by an attorney. AR 46. On April 23, 2018, the ALJ denied Plaintiff's application. AR 28-40.

The Appeals Council denied review on November 27, 2018. AR 1-8. On January 17, 2019, Plaintiff filed a complaint in this Court. Doc. 1.

## III.    Factual Background

### A. Plaintiff's Testimony

Plaintiff (born October 1969) attended school through the ninth grade in Mexico and could read and write in Spanish. AR 53. He could speak a little English but could not read it. AR 53-54. He had previously been employed as a dairy farm worker with the specific responsibilities of locking the house, cleaning the line and trimming the cows' hooves. AR 55. He generally did not have to lift more than fifteen pounds. AR 55.

Beginning in 2005, Plaintiff had three different knee surgeries but his knees still bothered him. AR 58. In October 2017, Plaintiff had left shoulder surgery and expected to use an arm sling for another month to month and a half. AR 58. Although Plaintiff could remove the sling for brief periods, he experienced pain without it. AR 58. Plaintiff generally relieved the pain using ice. AR 59. He did not use the Norco prescribed by his doctor because it made him feel terrible. AR 59. He continued to experience dizziness several times a month. AR 60.

Plaintiff testified that he could walk or stand for about an hour at a time before experiencing pain. AR 58. Sitting was comfortable until his legs became numb and he needed to stand up. AR 58. Reaching his arms above his head was painful. AR 60. Sometimes he could reach forward but sometimes it bothered him. AR 60. He could lift about six pounds. AR 61.

///

Plaintiff could help his wife with household chores about fifteen minutes at a time but would then need to rest for about ten minutes.  AR 61.

### B.  Medical Records[2]

In January 2014, magnetic resonance imaging revealed a complex tear of the posterior horn of the medial meniscus of Plaintiff's right knee, and an associated small meniscal cyst.  AR 457.  Several weeks later, orthopedist William C. Rand, M.D., examined Plaintiff's right knee and reviewed the x-rays and magnetic resonance imaging.  AR 455-56.  Dr. Rand referred Plaintiff for physical therapy.  AR 456.

In February 2014, Ann Miller, M.P.T., evaluated Plaintiff for physical therapy.  AR 295-296.  Plaintiff had been experiencing right knee pain for over a year but began experiencing severe pain in January.  AR 275.  Plaintiff's knee was swollen, tender, and the range of motion was reduced.  AR 295.

In April 2014, orthopedist Ian Duncan, M.D., examined Plaintiff's knee.  The examination revealed normal alignment; no swelling, ecchymosis or atrophy; and mild effusion.  AR 276.  Plaintiff experienced tenderness along the medial joint line.  AR 276.  Flexion and extension were normal but painful.  AR 277.  Test results were normal except for positive McMurray Medial and Apley's Grind.  AR 278.  Dr. Duncan diagnosed a right medial meniscus tear.  AR 278.

Dr. Duncan performed a partial meniscectomy and chondroplasty on April 28, 2014.  AR 293.  By mid-May, Plaintiff's pain was reduced although he was experiencing some swelling.  AR 284.  He had a full range of motion without pain.  AR 284.  Dr. Duncan referred Plaintiff for additional physical therapy.  AR 297-98.  By mid-June. Dr. Duncan cleared Plaintiff to return to exercise and sports as desired.  AR 286.

In October 2014, x-rays of Plaintiff's right shoulder showed mild osteoarthritis of the acromioclavicular joint.  AR 454.  On January 2015, Plaintiff began physical therapy for right shoulder pain.  AR 450.  His primary symptoms were increased pain with lifting, numbness and tingling of his right hand and fingers, and sleep disturbance from pain.  AR 450.  Magnetic

---

[2] The medical records also document Plaintiff's cardiac treatment following several instances of chest pain. Plaintiff does not dispute the agency's determination that Plaintiff's cardiac impairments were not severe.

resonance imaging revealed (1) tendinosis of the supraspinatus and infraspinatus tendons without evidence for full thickness rotator cuff disruptions; (2) mild edema and/or trace fluid in the subacromial subdeltoid bursal space suggesting bursitis; and, (3) chronic cystic degenerative changes in the superolateral humeral head and acromioclavicular joint degenerative changes. AR 453.

In January 2015, Plaintiff began physical therapy for his shoulder pain. AR 604.

In July and August 2015, Raynado Garcia, M.D., treated Plaintiff's left knee which was swollen and painful. AR 468-71, 486-92. Dr. Garcia initially diagnosed a knee sprain. AR 471. X-ray studies in July indicated mild osteoarthritis and a large suprapatellar bursa joint effusion. AR 500. Magnetic resonance imaging on August 11, 2015, revealed (1) a complex tear of the posterior horn of the medial meniscus that extended to the superior and inferior distal articular surfaces, and (2) mild osteophytic spurring of the margins of the medial femoral condyle and medial tibial plateau consistent with mild degenerative changes. AR 498. AR 498. Dr. Garcia referred Plaintiff to an orthopedic surgeon. AR 468.

In September 2015, David Surdyka, M.D., examined Plaintiff's left knee. AR 523. The knee was stable and retained full strength, but the McMurray test was positive and Plaintiff could not extend the knee. AR 523. After discussing alternatives, Plaintiff and Dr. Surdyka agreed on surgery. AR 524. In mid-September 2015, Dr. Surdyka performed left knee arthroscopy with partial medical and partial lateral meniscectomy. AR 530.

One week after the surgery, Plaintiff was using Advil for pain and walking with crutches. AR 532. Dr. Surdyka directed Plaintiff to bear weight on the knee as tolerated. AR 532. A physical therapy evaluation at the end of September revealed impaired range of motion; impaired flexibility; increased edema; impaired stabilization and strength; impaired patellar mobility; and, impaired gait and function. AR 535. Thereafter, Plaintiff participated in physical therapy. AR 577.

By December 2015, Plaintiff returned to Dr. Surdyka, complaining of left knee pain and weakness. AR 714. The condition of Plaintiff's knee did not improve in the following months,
///

4

and on May 20, 2016, the doctor performed a chondroplasty, loose body removal, partial medial

meniscectomy and synovectomy.  AR 707-08

In May 2017, magnetic resonance imaging of Plaintiff's shoulder revealed no evidence of

a full thickness rotator cuff tear.  AR 836.  Radiologist Paul Loeffler, M.D., diagnosed mild

supraspinatus tendinosis and mild degenerative osteoarthritic changes of the superolateral

humeral head and at the acromioclavicular joint,  AR 836.  Fluid in the subdeltoid bursal space

suggested possible bursitis and mild biceps tenosynovitis.  AR 836.

Additional MRI studies of Plaintiff's shoulder in September 2017 identified:

1. Bursal-sided fraying of the supraspinatus and infraspinatus tendons at and near the footprint.  No full-thickness or high-grade tear.  Background tendinosis.

2. Low-grade partial thickness intrasubstance tear of the upper fibers of the subscapularis tendon.  Background tendinosis.

3. Mild acromioclavicular osteoarthrosis.

AR 880.

### IV.    Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits.  "This court may set aside the

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on

legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence

within the record that could lead a reasonable mind to accept a conclusion regarding disability

status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less

than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation

omitted).  When performing this analysis, the court must "consider the entire record as a whole

and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v.*

*Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks

omitted).

///

1    If the evidence reasonably could support two conclusions, the court "may not substitute its

2    judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

3    F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's

4    decision for harmless error, which exists when it is clear from the record that the ALJ's error was

5    inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

6    1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

7    **V.      The Disability Standard**

8    
9    
10   
11   
12   
13   
14   

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

15   42 U.S.C. §1382c(a)(3)(B).

16   To achieve uniformity in the decision-making process, the Commissioner has established

17   a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

18   416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding

19   that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

20   Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

21   substantial gainful activity during the period of alleged disability, (2) whether the claimant had

22   medically determinable "severe impairments," (3) whether these impairments meet or are

23   medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

24   Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

25   perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs

26   existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

27   ///

28   ///

1

### VI.    Summary of the ALJ's Decision

2     The Administrative Law Judge found that Plaintiff had not engaged in substantial gainful

3     activity since the alleged onset date of January 4, 2014.  AR 30.  His severe impairments included

4     left shoulder degenerative changes and knee osteoarthritis post-arthroscopy.  AR 31.  None of the

5     severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

6     Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  AR 33.

7     The ALJ concluded that Plaintiff had the residual functional capacity to perform light

8     work as defined in 20 C.F.R. § 404.1564(b), except that Plaintiff could only occasionally climb

9     ramps and stairs, and could not climb ladders, ropes or scaffolds.  AR 34.  Plaintiff could

10    frequently balance and stoop, and occasionally kneel, crouch and crawl.  AR 34.  H could lift no

11    more than ten pounds with his left hand and could not reach overhead with his left arm.  AR 34.

12    He could occasionally reach in other directions with his left hand.  AR 34.

13    Plaintiff was unable to perform any past relevant work.  AR 38.  Considering Plaintiff's

14    age, education, work experience and residual functional capacity, jobs that Plaintiff could perform

15    existed in significant numbers in the national economy.  AR 39.  Accordingly, the ALJ found that

16    Plaintiff was not disabled at any time from January 4, 2014, the alleged onset date, through April

17    23, 2018, the date of the decision.  AR 40.

18    ### VII.    Sufficient Evidence Supported the ALJ's Determination

19    Plaintiff contends that the determination of Plaintiff's residual functional capacity was not

20    supported by sufficient evidence and that the ALJ erred in failing to adopt the opinions of his

21    treating physician Dr. Garcia and the examining physician Emmanuel Fabella, M.D.  The

22    Commissioner disagrees and contends that the ALJ properly rejected the opinions of Drs. Garcia

23    and Fabella since those opinions were inconsistent with the evidence as a whole. The Court

24    agrees that the ALJ's assessment of Plaintiff's residual functional capacity was supported by

25    substantial evidence.

26    ///

27    ///

28    ///

7

**A.** **Medical Opinions**

**1.** **Consultative Examinations: Internal Medicine**

On September 29, 2015, internist Emmanuel Fabella, M.D., performed an internal medicine consultation. AR 504-08. Plaintiff recounted his medical history and indicated that his impairments included hypertension regulated by medication, knee pain, a stomach ulcer, chest pain and a sebaceous cyst. AR 504. The agency did not provide any medical records for Dr. Fabella's review. AR 504.

Dr. Fabella observed that Plaintiff's gait was severely antalgic and unsteady due to postoperative pain. AR 506. Plaintiff used a single crutch. AR 506. The doctor observed nothing else abnormal. Because of Plaintiff's knee pain and impaired gait, Dr. Fabella opined that Plaintiff could lift and carry less than ten pounds both occasionally and frequently; walk and stand less than four hours in an eight-hour work day; and, could not climb, balance, kneel, crawl, walk on uneven terrain, climb ladders or work at heights. AR 508. Plaintiff required a crutch for ambulation. AR 508. Sitting and using his hands were not restricted. AR 508.

Dr. Fabella prepared a second internal medicine consultation on August 22, 2017. AR 673-83. Using a hand dynamometer, Plaintiff was able to generate 36 pounds of force with his right hand and eight pounds of force with his left hand. AR 674. Although the range of motion of Plaintiff's right shoulder was within normal limits, Plaintiff had pain and tenderness in muscles associated with the left shoulder joint and limited range of motion of the shoulder. AR 676. Resisted adduction caused severe pain in Plaintiff's left shoulder. AR 676. Dr. Fabella, who had not reviewed any imaging studies or other medical records, opined that Plaintiff's left shoulder pain was suggestive of rotator cuff tendinopathy. AR 676.

Dr. Fabella opined that Plaintiff was able to lift and carry less than ten pounds with his left hand, but had no similar limitations of the right hand. AR 677. Because of the left shoulder pain, Plaintiff could only occasionally climb, balance, kneel or crawl. AR 677. Similarly, Plaintiff should avoid climbing ladders and working at heights because of the pain and limited range of motion of his left shoulder. AR 677. Otherwise, Plaintiff was not limited in standing, walking,

///

sitting, seeing, hearing, or use of his hands independent of his left shoulder problem. AR 677.

There were no environmental limitations. AR 677.

### 2. **Consultative Examination: Psychiatry**

On October 6, 2015, psychologist Roger A. Izzi, Ph.D., prepared a psychiatric consultative report on Plaintiff. AR 510-13. Dr. Izzi diagnosed unspecified depressive disorder. AR 512. The doctor opined:

> The present evaluation suggests that the claimant does appear capable of performing a simple and repetitive type task on a consistent basis over an eight-hour period. His ability to get along with peers or be supervised in a work-like setting would be moderately limited by his mood disorder. The claimant's mood disorder will fluctuate as his subjective perception of pain fluctuates. Any significant fluctuation of mood may limit the claimant's ability to perform a complex task on a consistent basis over an eight-hour period.
>
> On a purely psychological basis, the claimant appears capable of responding to usual work session situations [*sic*] regarding attention and safety issues. On a purely psychological basis, the claimant appears capable of dealing with changes in a routine work setting.

AR 512-13.

### 3. **Agency Physicians**

On initial review in November 2015, agency physician A. Volterra, M.D., a dermatologist, noted Plaintiff underwent a left knee arthroscopy and partial medial and partial lateral meniscectomy of the left knee in September 2015. AR 80. Evidence also indicated mild degenerative osteoarthritis of the right shoulder with full strength, normal muscle bulk and tone, and no atrophy or focal muscle deficits. AR 80. Dr. Volterra recommended a light residual functional capacity with postural limitations from the date of onset to one day prior to surgery, and for one year after surgery. AR 80. Agency physician J. Collado, M.D., agreed. AR 80. Accordingly, the agency determined that Plaintiff was not disabled. AR 87.

On reconsideration in February 2016, agency physician W. Jackson, M.D., a surgeon, agreed with Dr. Volterra's assessment. AR 97, 100. Psychiatrist A. Garcia noted tension and anxiety but opined that Plaintiff was able to perform unskilled work. AR 97.

///

1          4.    **Medical Source Statements: Dr. Garcia**

2          Plaintiff's primary care physician, Raynado F. Garcia, M.D., completed a medical source

3     statement on June 29, 2017.  AR 666-70.  Dr. Garcia had treated Plaintiff since 2007.  AR 666.

4     Plaintiff's diagnoses included vertigo, anxiety, left shoulder bursitis, and osteoarthritis in both

5     knees.  AR 666.

6          Dr. Garcia opined that Plaintiff could walk one mile without rest or severe pain.  AR 666.

7     He was able to walk at a reasonable pace over rough or uneven terrain, use standard public

8     transportation, carry out routine ambulatory activities such as shopping and climb several stairs at

9     a reasonable pace.  AR 669.  Plaintiff could sit for more than two hours at a time and stand for

10    one hour at a time.  AR 666.  Plaintiff needed to walk for fifteen minutes every hour.  AR 667.

11    He needed to be able to shift positions at will.  AR 666.

12         In an eight hour workday, Plaintiff could stand and walk less than two hours and sit about

13    two hours.  AR 666.  About every two hours Plaintiff would need to rest for ten minutes due to

14    pain, parathesias or numbness.  AR 667.  Plaintiff did not need to elevate his legs or use an

15    assistive device.  AR 667.

16         Plaintiff could lift less than ten pounds frequently; ten pounds occasionally; and, twenty

17    pounds rarely.  AR 667   He could occasionally twist, stoop, crouch and squat, but could rarely

18    climb stairs or ladders.  AR 667.   Plaintiff had no significant limitation with reaching, handling

19    or fingering.  AR 667.  Plaintiff exhibited tenderness, pain and limitation of motion in his left

20    shoulder.  AR 668.  Plaintiff's left arm should reach overhead or in front of his body no more than

21    ten per cent of the work day.  AR 669.  Plaintiff was able to use hand and foot controls bilaterally.

22    AR 669.

23         Plaintiff was likely to be off task about 25 per cent of the work day.  AR 669.  He was

24    capable of low stress work.  AR 669.  Plaintiff was likely to be absent from work more than four

25    days each month.  AR 669.

26         In August 2017, Dr. Garcia completed a second medical source statement reporting that

27    Plaintiff had been diagnosed with left shoulder bursitis with pain rated 9/10 and decreased range

28    of motion.  AR 691-94.  Plaintiff was treating the pain with Naprosyn which produced side

effects of nausea and dizziness. AR 691. Plaintiff could sit or stand more than two hours before needing to take a break. AR 692. In an eight hour workday, he could sit about two hours and stand or walk at least six hours. AR 692. Plaintiff did not need to change positions at will or include periods of walking around during the work day. AR 692. However, Plaintiff might need to take fifteen minute breaks every hour due to pain, paresthesia and numbness. AR 692.

With regard to his left shoulder only, Plaintiff could rarely lift less than ten pounds. AR 693. Plaintiff had significant limitations using his hands, fingers and arms bilaterally. AR 693. He could occasionally twist, stoop, crouch and climb stairs, and rarely climb ladders. AR 693.

Plaintiff was likely to be off task about 25 per cent of the work day. AR 693. He was likely to miss four days of work each month. AR 693. Plaintiff was able to perform normal work with moderate stress. AR 693.

On August 20, 2018, Dr. Garcia provided a third medical source statement.[3] AR 12-15. The doctor reported that Plaintiff experienced chronic pain of the left shoulder and both knees. AR 12. Plaintiff also experienced depression and anxiety. AR 12. He was incapable of performing even low stress work. AR 14.

Dr. Garcia opined that Plaintiff could walk about two blocks without rest or severe pain. AR 12. Plaintiff could sit about two hours and stand about twenty minutes at a time. AR 12. In an eight hour workday, Plaintiff could sit less than two hours and stand/walk less than two hours. AR 12. Plaintiff did not require companion assistance to walk at a reasonable pace on rough or uneven surfaces; could use standard public transportation; and, could carry out routine ambulatory activities such as shopping and banking. AR 14. However, assistance was necessary to climb several stairs at a reasonable pace. AR 14. Plaintiff was able to use hand or foot controls. AR 14.

Plaintiff needed to be able to change position at will and walk about five minutes every one-half hour. AR 13. Plaintiff would need to take unscheduled fifteen minute breaks every two

///

---

[3] The Appeals Council accepted the third medical source statement, which was provided by Plaintiff after the ALJ had issued her opinion.

1  hours. AR 13. Because of imbalance, pain and insecurity, Plaintiff required an assistive device

2  to stand and walk. AR 13.

3      In Dr. Garcia's opinion, Plaintiff could occasionally lift and carry less than ten pounds and

4  rarely lift ten pounds. AR 13. Plaintiff could occasionally twist, stoop and crouch/squat; rarely

5  climb stairs; and, never climb ladders. AR 13. He was able to use his hands for fine

6  manipulations and to grasp, turn and twist objects about 66 per cent of an eight hour workday.

7  AR 14. Plaintiff could reach forward or overhead about five per cent of the workday. AR 14.

8      Plaintiff was likely to have good and bad days. AR 14. He was likely to be absent from

9  work more than four days monthly. AR 14.

10                        **B.      Determining Residual Functional Capacity**

11      "Residual functional capacity is an assessment of an individual's ability to do sustained

12  work-related physical and mental activities in a work setting on a regular and continuing basis."

13  SSR 96-8p. The residual functional capacity assessment considers only functional limitations and

14  restrictions which result from an individual's medically determinable impairment or combination

15  of impairments. SSR 96-8p.

16      A determination of residual functional capacity is not a medical opinion, but a legal

17  decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2)

18  (residual functional capacity is not a medical opinion), 404.1546(c) (identifying the ALJ as

19  responsible for determining residual functional capacity). "[I]t is the responsibility of the ALJ, not

20  the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d

21  1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in

22  medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039-

23  40 (9th Cir. 1995).

24      "In determining a claimant's [residual functional capacity], an ALJ must consider all

25  relevant evidence in the record such as medical records, lay evidence and the effects of

26  symptoms, including pain, that are reasonably attributed to a medically determinable

27  impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional

28  capacity determined based on all relevant medical and other evidence). "The ALJ can meet this

burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v, Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

### C.  The ALJ Properly Analyzed Evidence in the Record as a Whole

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

In the course of her assessment of the medical opinions, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 35. The ALJ explained:

> [Claimant] noted that his past three surgeries have not provided much relief. However, the objective record revealed essentially normal left knee range of motion and normal gait, muscle strength, and tone. Further, although the claimant stated that he experiences a lot of pain when attempting to reach above and/or in front, he noted that he was

13

able to help his wife fold clothes for 15 minutes. Further, the claimant noted that he had no difficulty opening jars, writing, turning a key, making a bed, washing or blowing his hair, and engaging in recreational activities.

Further, and most recently, in February 2017, although the claimant complained of hamstring tenderness, a physical examination revealed essentially normal left knee range of motion and stability. In addition, the claimant's lower extremity functional score drastically improved from 65 % to 86.25 %. In August 2017, the claimant's gait and balance continued to be normal and he did not require the use of assistive devices for ambulation. Despite testifying that he can only stand and walk for about an hour, the claimant's gait and balance was consistently unremarkable and he did not require the use of assistive devices for ambulation. I acknowledge the medical record demonstrates the claimant does have some workplace limitations. Accordingly, I accounted for these limitations in the above residual functional capacity.

AR 35-36 (citations to administrative record omitted).

The ALJ gave some weight to the opinions of the agency physicians, Drs. Volterra and Jackson, and to the consultative examiner Dr. Fabella, whose opinions were mostly consistent with the objective evidence as a whole. AR 36. In all three cases, the ALJ emphasized that examinations showing that Plaintiff retained full strength without focal motor deficits supported a finding that Plaintiff was capable of performing at least a reduced range of light work. AR 36. However, results of magnetic resonance imaging in May and September 2017 revealed shoulder impairments that supported limitations including no climbing of ladders, ropes and scaffolds; occasional crawling; and, lifting up to ten pounds and no overhead reaching with the left hand. AR 36.

Nonetheless, the ALJ found that Dr. Fabella underestimated the functional abilities of Plaintiff's left hand and rejected Dr. Fabella's opinion that Plaintiff should avoid working at heights in light of August 2017 evidence establishing that Plaintiff had normal gait and balance and did not need assistive devices to walk. AR 36-37. The ALJ gave little weight to Dr. Fabella's opinions that Plaintiff was limited to a reduced range of sedentary work, and could stand and walk only four hours in an eight-hour workday, finding that those opinions were not supported by the objective record as a whole. AR 37.

///

14

1    The ALJ gave little weight to Dr. Garcia's September 2015 and June 2017 medical source

2    statements.  AR 37.  The ALJ found these opinions to be inconsistent with each other and not

3    supported by the imaging and treatment records in evidence.  AR 37.  Characterizing Dr. Garcia's

4    opinion of Plaintiff's residual functional capacity as an underestimate of Plaintiff's functional

5    work capacity, the ALJ relied on objective evidence that Plaintiff retained full strength of the

6    upper and lower extremities; normal muscle bulk and tone without atrophy; and, retention of full

7    range of motion bilaterally.  AR 38.

8        "[A]n ALJ is responsible for determining credibility and resolving conflicts in medical

9    testimony." *Magallanes*, 881 F.2d at 750.  He properly determines the weight to be given each

10   medical opinion by considering the evidence in the record as the ALJ did here.  20 C.F.R. §

11   404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight

12   we will give to that opinion").  The record must include objective evidence to support the medical

13   opinion of the claimant's residual functional capacity.  *Meanel v. Apfel*, 172 F.3d 1111, 1113-14

14   (9th Cir. 1999).  Inconsistencies with the overall record or with a physician's own notes are a valid

15   basis to reject a medical opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111-1112 (9th Cir. 2012)

16   (recognizing that a conflict with treatment notes is a germane reason to reject a treating

17   physician's assistant's opinion); *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (rejecting

18   physician's opinion when treatment notes provide no basis for the opined functional restrictions);

19   *Tommasetti*, 533 F.3d at 1041 (incongruity between questionnaire responses and the Plaintiff's

20   medical records is a specific and legitimate reason for rejecting an opinion); *Valentine v. Comm'r*

21   *of Soc. Sec. Admin.*, 574 F.3d 685, 692-693 (9th Cir. 2009) (holding that a conflict with treatment

22   notes is a specific and legitimate reason to reject a treating physician's opinion).

23       The Court is not required to accept Plaintiff's characterization of his treatment records or

24   his assessment of the medical opinions.  The ALJ fully supported her determination based on

25   multiple medical opinions and the evidence of record.  Even if this Court were to accept that the

26   record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as

27   well.  When the evidence could arguably support two interpretations, the Court may not substitute

     its judgment for that of the Commissioner.  *Jamerson*, 112 F.3d at 1066.

28

## X. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Antonio Medina Venegas.

IT IS SO ORDERED.

Dated: __**March 4, 2020**__         _____**/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE